Harold V. BEIGHLEY and wife Mary Beighley, and El Rancho Pinoso, Inc., a corporation, Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Receiver of Moncor Bank, N.A., Hobbs, New Mexico, Defendant.

Civ. A. No. CA-5-85-324.

United States District Court,
N.D. Texas,
Lubbock Division.

Dec. 30, 1987.

---

See also, 679 F.Supp. 625.

Johnny Roy Phillips, Seminole, Tex., Thomas W. George, Lee Vickers, Austin, Tex., for plaintiffs.

Harold H. Pigg, Brock, Morton & Pigg, Lubbock, Tex., for defendant.

## ORDER

WOODWARD, Senior District Judge.

Following upon a loan transaction the details of which are here disputed, Plaintiffs began this action in state court charging Moncor Bank, N.A., Hobbs, New Mexico (Moncor), with breach of contract, common law fraud, fraud under Tex.Bus. & Com.Code Ann. § 27.01; breach of fiduciary duty, promissory estoppel, and breach of agency contract. In the alternative to money damages, plaintiffs asked for equitable relief placing them in the position they were in prior to defendant's acts.

After default judgment was entered in favor of plaintiffs, the Federal Deposit Insurance Corporation (FDIC) filed Notice of Substitution declaring that it was the proper party to defend the action since it had been appointed receiver for Moncor. Following removal to this court, defendant's motions for relief from judgment and for new trial were granted, and defendant raised as counterclaim the original promissory note.

The case was scheduled for trial when the United States Supreme Court held in *Langley v. FDIC*, —— U.S. ——, 108 S.Ct. 396, 98 L.Ed.2d 340 (U.S. Dec. 1, 1987), that even a fraudulent misrepresentation of which FDIC has knowledge constitutes an agreement for purposes of 12 U.S.C. § 1823(e), and neither fraud in the inducement nor the FDIC's knowledge thereof can act as a defense to a claim on the note. Because *Langley* seemed to deal with some of the issues raised in the instant case, trial was stayed pending supplemental briefs discussing whether *Langley* would be dispositive of defendant's motion for summary judgment (which was being carried through trial).

The court has now received and reviewed those briefs. The court has also reviewed the trial briefs as well as defendant's motion for summary judgment and the reply and surreply thereto. After considering the arguments and authorities cited, the evidence submitted, and the applicable law, the court intends to and will enter judgment for defendant FDIC depending only on plaintiffs' ability to satisfy the precise terms of 12 U.S.C. § 1823(e).

Plaintiffs acknowledge that *Langley* vitiates one of their defenses to the counterclaim (that the FDIC cannot rely upon 12 U.S.C. 1823(e) "because it purchased the

asset with knowledge of the defense," Plaintiffs' Supplemental Trial Brief at 8). Plaintiffs deny, however, that *Langley* has any bearing on any of their other defenses or on their affirmative claims. On the surface, plaintiffs seem correct. *Langley* does not specifically deal with the other defenses plaintiffs seek to raise against FDIC's counterclaim. Nor does *Langley* directly address the question of affirmative relief against the FDIC for actions of a bank of which it has become a receiver.

■ The essential holding of *Langley* is that the FDIC should not be prohibited from pursuing a claim except when the very narrow terms of 12 U.S.C. § 1823(e) are satisfied exactly. To contend, as plaintiffs do, that the holding is not applicable to their affirmative claims against the FDIC is, while technically defensible, to misunderstand *Langley* 's import. To allow a claim *against* the FDIC asserting the very grounds that could not be used as a defense to a claim *by* the FDIC is to let technicality stand in the way of principle. Moreover, the effect of such an approach would be to reduce actions Congress has allowed the FDIC to pursue to nullities since defendants could counterclaim and recover what they lost.

"One purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets." *Id.* at — U.S. at —, 108 S.Ct. at 401. Allowing plaintiffs' affirmative claim in the face of § 1823(e) would undermine that purpose. Plaintiffs' affirmative claim is only as good as their defenses to FDIC's counterclaim.

Plaintiffs also raise other defenses to FDIC's counterclaim. They assert that FDIC in its corporate capacity is not a party to this action and cannot, therefore, maintain a counterclaim. They assert that 12 U.S.C. § 1823(e) unconstitutionally violates their rights to due process and equal protection under the fifth amendment. And they assert that they have actually "produced documents from January 1984 [and from November 1984] and subsequently which satisfy 12 U.S.C. § 1823(e)." Plaintiffs' Supplemental Trial Brief at 8.

Plaintiffs' first claim is simply wrong. They originally raised the claim in their Brief in Support of Opposition to Motion for Leave to Amend Answer and Counterclaim of Federal Deposit Insurance Corporation, filed October 23, 1987. In that brief, plaintiffs objected to the counterclaim on the grounds that FDIC had substituted into the case in its capacity as receiver and that it could not, more than a year later, assert that it held the note in its corporate capacity and was counterclaiming in that role.

Whatever merit there might otherwise be to such an argument, there can be none where, as here, plaintiffs simply have their facts wrong. As early as August 22, 1986, more than one year before plaintiffs claim to have been surprised that FDIC in its corporate capacity either held the note or might seek to be a party to this action, FDIC filed its first Answer and Counterclaim. The counterclaim includes the assertions that (1) FDIC "brings the following action in its corporate capacity," Answer and Counterclaim of Federal Deposit Insurance Corporation at 5, and (2) "FDIC, in its corporate capacity ..., purchased from the Receiver certain assets of the Bank. Among the[se] assets ... are the promissory note and accompanying collateral documents at issue herein, *id.* at 6.

Furthermore, the record does not support the assertion that FDIC substituted into the case solely as receiver. It is true that FDIC declared in its Notice of Substitution of Parties that it had been "appointed receiver of Moncor Bank, N.A., Hobbs, New Mexico." That is not a declaration that FDIC is substituting only in its capacity as receiver. And, of course, there is no question that FDIC is authorized to act simultaneously in both its legal capacities. *See* 12 U.S.C. § 1823(c)(2)(A).

Plaintiffs' second defense, that 12 U.S.C. § 1823(e) has deprived them of their rights to due process and equal protection, is similarly meritless.

■ Even if the purchase and assumption transaction by which FDIC in its corporate capacity acquired the note from

FDIC in its capacity as receiver did, in fact, deprive plaintiffs of what are recognized as property rights under the due process clause, it would not necessarily follow that the due process clause was violated. The simple fact is that "[w]hen one makes a note, events beyond the obligor's control may alter his obligations or rights without notice to him." *Chatham Ventures, Inc. v. FDIC*, 651 F.2d 355, 363 (5th Cir. Unit B 1981), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). "[D]ue process does not require that the obligors be parties to a hearing at the time of the transfer. Subsequent judicial proceedings can safeguard any substantive rights the obligors possess." *Id.* at 362. Nor is it pertinent that innocent obligors may suffer for dealing with an insolvent bank. "Clearly Congress may constitutionally enact reasonable legislation that shields the FDIC in this manner. We decline the obligors' invitation to declare the operation of this statute unconstitutional, either in whole or in part." *Id.* at 363.

The only arguably meritorious defenses plaintiffs assert respond to the actual terms of 12 U.S.C. § 1823(e). That statute requires that no agreement tending

> to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

As *Langley* makes abundantly clear, these provisions are to be strictly construed. The court finds that the multitude of documents, affidavits, depositions, and memoranda offered by the plaintiffs as sat-isfying the documentary requirements of § 1823(e) are insufficiently precise.

It is therefore ORDERED, ADJUDGED AND DECREED that judgment will be entered for defendant Federal Deposit Insurance Corporation unless plaintiffs provide to this court, on or before January 13, 1988, a clear statement of which documents they claim satisfy § 1823(e)(1), which satisfy § 1823(e)(2), which satisfy § 1823(e)(3), and which satisfy § 1823(e)(4). Of course, plaintiffs must also provide the documents themselves.