**SUNBELT SAVINGS, FSB, DALLAS, TEXAS, Plaintiff,**

v.

**Harold BIRCH and John Cockrell, Defendants,**

**FDIC as Manager of the FSLIC Resolution Fund in its Capacity as Statutory Successor to the FSLIC as Receiver for Sunbelt Savings Association of Texas, Intervenor.**

No. 3:88–CV–2760–P.

United States District Court,
N.D. Texas,
Dallas Division.

May 27, 1992.

Patrick O. Strauss, John J. Edwards, Haynes & Boone, Dallas, Tex., for plaintiff Sunbelt Federal Sav., FSB, Dallas, Tex.

Stewart Frazer, Johnette Oden, Dallas, Tex., for defendants Harold Birch and John Cockrell.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND INTERVENOR'S MOTION TO DISMISS

SOLIS, District Judge.

Before the Court are the following motions: (1) Plaintiff's Motion for Summary Judgment, filed December 9, 1988, to which Defendants Harold Birch and John Cockrell responded April 25, 1989, and the Plaintiff replied March 21, 1990; and (2) the Intervenor's Renewed Motion to Dismiss, filed April 17, 1989, to which Defendants Birch and Cockrell responded May 10, 1989, and the Intervenor replied June 9, 1989.

For the reasons stated herein, the Court finds the Plaintiff's Motion for Summary Judgment should be GRANTED, along with the Intervenor's Motion to Dismiss.

## I. Facts and Contentions of the Parties

At issue in this case is a promissory note executed January 24, 1985, by Joe Zais Builders, Inc., a Texas corporation, in behalf of Sunbelt Service Corporation, a unit of Sunbelt Savings Association of Texas. This note, secured by a parcel of real property in Tarrant County, Texas, was in the principal amount of $4.85 million, with interest to be paid at a variable rate equal to the least of 12 percent per annum, one percent plus the prime rate in effect, or the maximum rate allowed by law. Also on January 24, 1985, Joseph J. Zais, Harold Birch and John Cockrell signed guaranties on the note.

The bank, in a letter dated September 15, 1986, made a written demand for payment upon the note's maker and its guarantors, stating that the note was in default. As of January 5, 1988, the principal outstanding on the note was $4,884,132. Accrued and unpaid interest as of that date was $721,777.23.

The property securing the note sold for $2,737,500, leaving a balance due on the principal amount of $2,868,409.23, and $379,005.38 in interest owing as of October 7, 1988. Interest has continued to accrue on this amount at the rate of $940.46 per day.

This action was originally filed in the 162nd Judicial District Court of Dallas County. Defendants Birch and Cockrell each filed answers in April 1988. On August 16, 1988, the state court granted Sunbelt Savings a nonsuit against Defendant Joseph J. Zais, dismissing the Plaintiff's claims against him without prejudice.

On August 19, 1988, the Federal Home Loan Bank Board appointed the Federal Savings and Loan Insurance Corporation (FSLIC) as Receiver for Sunbelt Savings Association of Texas (Old Sunbelt). The FSLIC then sold substantially all the assets of Old Sunbelt, including the note at issue, to a new institution, Sunbelt Savings, FSB (New Sunbelt).

On October 20, 1988, Defendants Birch and Cockrell filed a counterclaim, which they amended in November 1989. The counterclaim alleges usury, breach of an obligation to deal in good faith, breach of fiduciary duty, economic coercion, violations of the Bank Tying Act and violations of the Texas Deceptive Trade Practices–Consumer Protection Act. The Defendants seek a set-off against the amount owed under the note, exemplary damages and attorneys' fees.

On November 4, 1988, the FSLIC removed the suit to federal court, pursuant to 12 U.S.C. § 1730(k)(1). On November 3, 1989, the Court granted the parties' agreed motion to amend the caption of this case to show the Plaintiff to be Sunbelt Savings, FSB, and the Intervenor to be the Federal Deposit Insurance Corporation (FDIC), as Manager of the FSLIC Resolution Fund in its Capacity as Statutory Successor to FSLIC as Receiver for Sunbelt Savings Association of Texas.

In its motion to dismiss, the Intervenor, at that time the FSLIC, contends the Court lacks subject matter jurisdiction over the Defendants' counterclaims because Defendants Cockrell and Birch have failed to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). The Intervenor argues that since the Federal Home Loan Bank Board has determined Sunbelt is insolvent, no general unsecured creditors can recover any money on their claims. The new bank (New Sunbelt) that took over the assets of Sunbelt Savings Association (Old Sunbelt) in a purchase and assumption transaction did not agree to assume any of Old Sunbelt's liabilities. Therefore, the Intervenor contends, the Defendants' counterclaims are moot.

Defendants Cockrell and Birch respond that their counterclaims should not be dismissed precisely because they are brought as counterclaims. They contend that any recovery they would receive from the Plaintiff would come in the form of a set-off against any judgment the Plaintiff might receive against them for liability under the promissory note.

In reply, the Intervenor argues that the Defendants' claims address the conduct of Old Sunbelt, and thus cannot be asserted as counterclaims against the Plaintiff in this action, the holder of the promissory note, which is now the RTC. The Intervenor also states that the Defendants were barred from pursuing a claim alleging usury, because usury is a defense personal to the borrower. By the terms of the promissory note, Joe Zais Builders, Inc., was the borrower; Defendants Birch and Cockrell were guarantors.

In a letter brief dated October 17, 1989, the FDIC also contests the Defendants' characterization of their counterclaims as a set-off, arguing that the counterclaims seek additional relief and that the counterclaims are not properly pled under Fed. R.Civ.P. 13 because they are not directed at conduct of the Plaintiff, New Sunbelt, the owner of the note.

In the motion for summary judgment, Sunbelt Savings, FSB (New Sunbelt), states it is the owner and holder of the note in question, which is due and owing, and in default. New Sunbelt asks the Court to grant a judgment against the guarantors for their failure to pay.

In their response, Defendants Birch and Cockrell state that Sunbelt Savings Corporation conditioned its loan to Joe Zais Builders, Inc., upon a promise to receive half the profits from the project for which the building company intended to use the loan. The Defendants state an agreement to this effect was executed July 26, 1983. Also on this date, the Defendants state, Sunbelt Savings Corporation demanded a large sum of the loaned money be immediately paid back by the building company, as a commitment fee. The Defendants state the promissory note at issue is a renewal of this 1983 loan, but with the principal increased by $350,000. The Defendants have submitted a copy of the promissory note of July 26, 1983, and a document titled "Option Agreement." [1] The Option Agreement states in part: "Seller hereby grants to the Association the right to acquire either an

---

1. See Exhibits to Affidavit of John H. Cockrell in Support of Defendants' Response to Plaintiff's Motion for Summary Judgment, filed April 25, 1989.

undivided fifty percent (50%) interest in and to the Property ... or at the Association's election, in its sole discretion, a fifty percent (50%) interest in the Net Profits ... of and from the Property...." Due to Sunbelt Service Corporation's demand for 50 percent of the building company's profits, the Defendants contend the lending institution violated Texas usury law.

In reply, New Sunbelt reiterates the FSLIC's contention that Defendants Birch and Cockrell cannot pursue a usury defense and states it is not responsible for any actions of its predecessor, Old Sunbelt. New Sunbelt asks the Court to follow the *D'Oench, Duhme* doctrine and its progeny, and find New Sunbelt to be a holder in due course of the note at issue. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

## II. Motion to Dismiss

■ The Intervenor, in its motion to dismiss, contends the Defendants may not pursue any claims against the Receiver for Old Sunbelt, now the FDIC, because Old Sunbelt has been found insolvent and its Receiver does not now and will not ever possess any of Old Sunbelt's assets from which the Defendants could collect. Therefore, the Intervenor contends, the Defendants' counterclaims are moot against it.

In a similar case dealing with claims against Old Sunbelt, *FDIC v. Browning*, 757 F.Supp. 772 (N.D.Tex.1989), Judge Sanders found a judgment creditor of Old Sunbelt would be unable to collect the judgment from the FDIC Receiver. "All of the rights to pursue claims inherited from Old Sunbelt were transferred either to New Sunbelt or to FSLIC in its Corporate capacity." *Id.* at 773. In *Browning*, the claims against the FDIC Receiver alleged fraud, breach of contract, breach of fiduciary duty and usury. *Id.* As in the case at bar, they were presented as counterclaims. Judge Sanders dismissed them all, stating that "[a]s a practical matter, [the defendant] will never be able to recover on his counterclaims, and they should be dismissed on prudential grounds." *Id.*

The contention that a debtor is entitled to set off his claims against the amount due under the note also has been held to be a futile argument in a situation where the assets and the liabilities of a failed institution are held by separate entities. *Beighley v. FDIC*, 868 F.2d 776, 784 (5th Cir. 1989). Therefore, the Defendants cannot assert claims against New Sunbelt as purchaser of the assets of Old Sunbelt, when all liabilities for Old Sunbelt are held by the FDIC as Receiver for the failed institution.

For these reasons, the Court finds the Defendants' claims against the FDIC as Receiver should be DISMISSED.

## III. Motion for Summary Judgment

### A. Standard for summary judgment

Summary judgment is proper where no genuine issue of material fact exists that would necessitate a trial. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The party defending against a motion for summary judgment cannot defeat the motion unless he provides specific facts that show the case presents a genuine issue of material fact, such that a jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). *See Foval v. First National Bank of Commerce in New Orleans*, 841 F.2d 126, 129 (5th Cir. 1988). Suits to enforce promissory notes have been found often to be particularly suited for summary judgment. *See FDIC v. Cardinal Oil Well Servicing Co.*, 837 F.2d 1369, 1371 (5th Cir.1988); *North Denver Bank v. Freeby*, 285 F.Supp. 74 (N.D.Tex.1967), *aff'd*, 394 F.2d 149 (5th Cir. 1968).

### B. Analysis

This case presents a situation where a party has produced a written copy of an agreement executed contemporaneously with the note. The Defendants have submitted, with the Affidavit of John Cockrell, a copy of a document titled "Option Agreement" that states Sunbelt Service Corporation, as a portion of the consideration for

its commitment to loan $4.55 million to Joe Zais Builders, Inc., shall receive rights to acquire title or a profits interest in the property to be purchased with the loan. This document bears the notarized signatures of Joseph J. Zais, as president of Joe Zais Builders, Inc., and Jean Hyde, as vice president of Sunbelt Service Corporation, both dated July 26, 1983.

■ Under 12 U.S.C. § 1823(e) (1982), a codification of the *D'Oench, Duhme* doctrine, a side agreement shall be considered valid only if it is: (1) in writing, (2) executed contemporaneously, (3) approved by bank board of directors or loan committee, and (4) continuously an official record of the bank. *Beighley v. FDIC*, 679 F.Supp. 625, 626–27 (N.D.Tex.1988); *FDIC v. deJesus–Velez*, 678 F.2d 371 (1st Cir.1982). The document presented here of itself satisfies the first two criteria. None of the parties have addressed the third and fourth points.

*D'Oench, Duhme* bars claims seeking relief for alleged wrongful conduct of a failed institution against the institution's receiver and its successor. *RSR Properties, Inc. v. FDIC*, 706 F.Supp. 524 (W.D.Tex.1989); *FSLIC v. Murray*, 853 F.2d 1251 (5th Cir.1988); *FDIC v. Cremona Co.*, 832 F.2d 959, 964 (6th Cir.1987), *cert. dismissed sub nom., Gonda v. FDIC*, 485 U.S. 1017, 108 S.Ct. 1494, 99 L.Ed.2d 883 (1988); *FDIC v. Investors Associates X, Ltd.*, 775 F.2d 152 (6th Cir.1985) (*D'Oench, Duhme* applies even when FDIC knew of circumstances surrounding alleged side agreement). Also, Judge Fitzwater has previously found that New Sunbelt is a holder in due course of the assets of Old Sunbelt it received through the purchase and assumption transaction with the FSLIC, and thus immune to personal defenses raised by debtors on the acquired assets. *B.L. Nelson and Associates, Inc. v. Sunbelt Savings, FSB*, 733 F.Supp. 1106, 1113 (N.D.Tex.1990).

However, the Fifth Circuit held in 1991 that the federal holder in due course doctrine does not protect either the FDIC or a successor institution from personal defenses where the note in question is non-negotiable, as is this variable-rate interest note.

*Sunbelt Savings, FSB v. Montross*, 923 F.2d 353 (5th Cir.1991).

In the wake of *Montross*, and with some written evidence of a side agreement that conceivably could survive *D'Oench, Duhme* presented in this case, the Court examines each of the Defendants' counterclaims in turn.

### 1. *Usury*

In any event, however, the Option Agreement does not allow the Defendants to survive summary judgment against their claim of usury, for the simple reason that the Defendants are acting solely in their capacity as individual guarantors.

■ Under Texas law, a plaintiff may recover upon a guaranty if he shows (1) that the defendant executed the guaranty, (2) that the underlying note is in default, (3) that the plaintiff is the present holder of the note and guaranty, and (4) that a certain balance is due and owing. *Clark v. Dedina*, 658 S.W.2d 293, 295 (Tex.App.— Houston [1st Dist.] 1983, writ dism'd); Tex. Bus. & Com.Code § 3.307 (Vernon 1968). The same proof that establishes a right to summary judgment on a note also applies to establish a right to summary judgment on a guaranty. *Universal Metals and Machinery, Inc. v. Bohart*, 539 S.W.2d 874, 877–78 (Tex.1976). The Plaintiff, New Sunbelt, has presented such proof.

■ Guarantors, however, are estopped from asserting defenses personal to the borrower. Under Texas law, usury is a personal defense, and may not be asserted by the guarantor unless the guaranty also contains the usurious provision complained of in the note. Tex.Civ.Stat. art. 1302–2.09 (1990); *see Houston Sash and Door Co., Inc. v. Heaner*, 577 S.W.2d 217, 222 (Tex. 1979). In *FSLIC v. Griffin*, 935 F.2d 691 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1163, 117 L.Ed.2d 410 (1992), the Fifth Circuit held a guarantor could not assert a usury defense even where the underlying note charged more than twice

the maximum interest rate allowed by law. *Id.* at 701.[2]

Although it appears Sunbelt Service Corporation may have intended to charge a usurious rate of interest, Defendants Birch and Cockrell may not pursue a claim for usury. The only statements reflecting the intent to charge a usurious rate of interest are in the option agreement, which relates solely to the note. The guaranties signed by the Defendants do not mention the option agreement, and the option agreement could not be enforced against the guarantors, because the provision allowing Sunbelt Service Corporation to demand 50 percent of the net profits from the project planned by Joe Zais Builders, Inc., is an obligation that can only be fulfilled by Joe Zais Builders, Inc.

### 2. *Breach of good faith*

■■■ The Defendants also claim a breach of the duty of good faith. In Texas law, the covenant of good faith and fair dealing applies only where a special relationship exists between the parties to a contract. *English v. Fischer*, 660 S.W.2d 521, 522 (Tex.1983); *FSLIC v. Wilson*, 722 F.Supp. 306, 311 (N.D.Tex.1989). The Defendants imply a special relationship existed, contending Sunbelt Service Corporation knew Joe Zais Builders, Inc., would be ruined without the loan, and that Sunbelt Service Corporation took advantage of its position by drafting the option agreement as partial consideration for the loan.

Again, however, the alleged breach involves the option agreement, which affected only Joe Zais Builders, Inc., and not the individual guarantors. The Defendants, as guarantors, are not required to pay anything under the option agreement. Therefore, they have no grounds to assert a breach of the covenant of good faith.

### 3. *Breach of fiduciary duty*

■■■ The Defendants may not assert a claim of breach of fiduciary duty, because

they were not involved in any type of partnership transaction. *See FSLIC v. Griffin*, 935 F.2d at 699–700; *Gutierrez v. Yancey*, 650 S.W.2d 169, 172 (Tex.App.—San Antonio [4th Dist.] 1983, no writ).

### 4. *Texas DTPA*

Also, the Defendants have presented no evidence to support a claim under the Texas DTPA. As was the case in *RSR Properties*, "There is no evidence that these officers of the [institution] represented that the goods or services had characteristics that they did not; that an agreement conferred rights which were not there in the agreement; or made any other untrue representation." 706 F.Supp. at 529–30. Again, the Defendants have not argued that any part of the guaranties are suspect.

### 5. *Other Claims*

The Defendants have also asserted claims for economic coercion and for violations of the Bank Tying Act. As to the claim of economic coercion, the Defendants have presented no facts to indicate they were unlawfully pressured into signing the guaranties. Also, the Defendants have failed to present any evidence whatsoever explaining their claim under the Bank Tying Act as it ties to their position as guarantors. Accordingly, both these claims shall be dismissed.

### IV. Conclusion

For the reasons stated herein, the Court finds summary judgment should be GRANTED for the Plaintiff, Sunbelt Savings, FSB, and that the Intervenor FDIC's Motion to Dismiss also should be GRANTED. The Defendants' counterclaims are DISMISSED.

The Defendants are hereby ordered to pay the Plaintiffs the following amounts:

(1) $2,868,409.23, as principal due and owing on the note;

---

**2.** Although Texas law considers a charge of more than twice the maximum interest rate to be void for illegality, the Fifth Circuit determined only the usurious interest, and not the

promissory note itself, would be found void. *Id.* at 700–01. *See also First South Savings Ass'n v. First Southern Partners, II, Ltd.*, 957 F.2d 174, 177 (5th Cir.1992).

(2) $379,005.38, as interest owing on the note as of October 7, 1988;

(3) additional interest from October 7, 1988, at the rate of $940.46 per day;

(4) costs of court;

(5) attorneys' fees, as set forth in the guaranties.

The Affidavit of John J. Edwards, filed December 9, 1988, stated attorneys for the Plaintiff have incurred $4,082.60 in fees in this case, for approximately 41.06 hours of work. Edwards sought attorneys' fees in the amount of $5,582.60, anticipating an additional $1,500 in fees. The Court notes that several motions and responses were filed in this case in 1989 and 1990, and that Plaintiffs may have accordingly incurred additional attorneys' fees.

Therefore, the Court directs the Plaintiff to file an updated affidavit in support of attorneys' fees, listing billing rates and hours of work performed, through the entire case. This affidavit shall be filed 30 days from the date of this Order.

SO ORDERED.