Michael GULLEY, et al.,
Plaintiffs–Appellants,

v.

SUNBELT SAVINGS, F.S.B., et al.,
Defendants–Appellees.

VALLEY RANCH DEVELOPMENT
CO., LTD., et al.,
Plaintiffs–Appellants,

v.

SUNBELT SAVINGS, FSB, et al.,
Defendants–Appellees.

Nos. 89–1623, 89–1624.

United States Court of Appeals,
Fifth Circuit.

June 1, 1990.

Rehearing Denied June 27, 1990.

Richard Jackson, Tresi Moore Freemyer, Richard Jackson & Assoc., Dallas, Tex., for plaintiffs-appellants.

Thomas E. Kurth, Haynes and Boone, Dallas, Tex., for Sunbelt Savings, FSB.

Kirk K. Van Tine, James M. Silver, Washington, D.C., for FSLIC.

James A. Hendriksen, Sr. Trial Atty., Thomas J. Segal, Assoc., Chief Counsel, Washington, D.C., for Office of Thrift Supervision.

Before GOLDBERG, REAVLEY and HIGGINBOTHAM, Circuit Judges.

REAVLEY, Circuit Judge:

Valley Ranch Development Company and Michael Gulley each brought a state law action seeking a declaration that, pursuant to the Texas Uniform Fraudulent Transfer Act, Tex.Bus. & Com.Code Ann. §§ 24.-001–.013 (Vernon 1987), the transfer of assets by the Federal Savings and Loan Insurance Corporation (FSLIC) to Sunbelt Savings, FSB was void. The cases were removed to federal court where judgments were entered against both plaintiffs upon the court's determination that the Fraudulent Transfer Act is preempted by laws granting FSLIC authority to dispose of a failed institution's assets. We affirm the district court's judgments without reaching the preemption issue.

## I.

On August 19, 1988, the Federal Home Loan Bank Board (FHLBB) issued a resolution declaring Sunbelt Savings Association of Texas ("Sunbelt Savings") insolvent and appointing FSLIC to act as receiver of the failed institution. The resolution directed FSLIC to liquidate Sunbelt Savings' assets. To accomplish the liquidation, FSLIC entered into an Acquisition Agreement with Sunbelt Savings, FSB ("New Sunbelt"), a newly chartered federal savings bank. Pursuant to that agreement, FSLIC transferred virtually all of Sunbelt Savings' assets to New Sunbelt. In return, New Sunbelt assumed liabilities to depositors, to the extent of their deposits, and liabilities to secured creditors, to the extent of the value of their security. New Sunbelt did not assume liabilities to unsecured general creditors.

At the time of the insolvency declaration, Valley Ranch Development Company and Michael Gulley, hereinafter appellants, were plaintiffs in actions against Sunbelt Savings that were pending in state court. FSLIC, in its capacity as receiver, subsequently removed these proceedings to federal district court, where they currently are pending. The Acquisition Agreement, however, left no assets in the receivership estate to satisfy a judgment should appellants prevail in their suits. Accordingly, appellants brought separate state court actions against New Sunbelt seeking a declaration that the transfer of assets pursuant to the Acquisition Agreement was void. FHLBB and FSLIC intervened in the suits as defendants, and FSLIC removed the proceedings to federal court.

On motions for summary judgment, the district court concluded that application of the Fraudulent Transfer Act would stand as an obstacle to the accomplishment and execution of the full purposes of Congress in granting FSLIC authority to dispose of the assets of failed savings and loans. The court thus held that the Act is preempted and entered judgment for the defendants. *See Gulley v. Sunbelt Savings FSB*, 714 F.Supp. 819 (N.D.Tex.1989); *Valley Ranch Dev. Co. v. Sunbelt Savings FSB*, 714 F.Supp. 817 (N.D.Tex.1989).

## II.

The relief appellants sought in the district court was a declaration that FSLIC's transfer of assets to New Sunbelt was void because it was in violation of the Fraudulent Transfer Act. This court has held that the purpose of that statute is to provide creditors a means of obtaining re-

lief when a debtor transfers an asset "in an effort to put it out of the reach of creditors," *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275 (5th Cir.1983), thereby leaving the debtor without sufficient assets to satisfy creditors' claims. *Cf. Harrisburg Nat. Bank v. Geo. C. Vaughan & Sons*, 204 S.W.2d 9, 12 (Tex.Civ.App.—Galveston 1947, writ dism'd) ("The manifest purpose of the statute is to prevent debtors from taking their property from view and placing it beyond the reach of their creditors."). In such a case, a creditor may obtain an "avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." Tex.Bus. & Com.Code Ann. § 24.008(a) (Vernon 1987).

The statute defines a "creditor" as "a person ... who has a claim." *Id.* § 24.002(4). A "claim" is defined as "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 24.002(3). In order to obtain relief under the statute, therefore, appellants had to show, at a minimum: (1) that they had a right to payment out of the assets in the Sunbelt Savings receivership estate; (2) that FSLIC transferred those assets out of the receivership estate; (3) that the transfer was fraudulent within the meaning of the statute, *see id.* §§ 24.005(a), 24.006; and (4) that avoidance of the transfer was necessary to satisfy their claims.

▮▮ As noted above, FHLBB appointed FSLIC as receiver and directed it to liquidate Sunbelt Savings' assets. The relevant federal statute granted FSLIC the rather broad authority "to liquidate [an association's] assets in an orderly manner."[1] 12 U.S.C. § 1729(b)(1)(A)(v) (repealed 1989); *see id.* § 1729(c)(1)(A) (repealed 1989). FSLIC's discretion was limited to a certain extent by a federal regulation that establishes a priority system for the payment of unsecured claims against an institution being liquidated.[2] *See* 12 C.F.R. § 569c.11(a). That regulation accords top priority as between unsecured creditors to creditors with claims for administrative expenses, wages and salaries, and government taxes. *Id.* § 569c.11(a)(1)–(5). Next in line are persons with "[c]laims for withdrawable accounts" and persons holding any "other claims which have accrued and become unconditionally fixed on or before the date of default." *Id.* § 569c.11(a)(6). This particular subsection, however, provides that, if the liquidation involves a state-chartered association and state law gives priority to depositors over other general creditors, that aspect of the state's priority law will apply. *Id.* The relevant Texas priority scheme prefers depositors to general creditors in a liquidation situation. *See* Tex. Rev.Civ.Stat.Ann. art. 852a, § 8.09(g) (Vernon Supp.1990). Thus, federal regulations required FSLIC to pay depositors' claims before it paid general creditors' claims.[3]

1. The Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 1989 U.S.Code Cong. & Admin.News (103 Stat.) 183, repealed substantial portions of the National Housing Act and transferred the authority that FSLIC previously exercised over savings and loans to the Federal Deposit Insurance Corporation.

2. Appellants suggest that, in transferring Sunbelt Savings' assets to New Sunbelt, FSLIC did not liquidate those assets but instead engaged in a purchase and assumption transaction, which in turn requires application of different statutory and regulatory provisions. We disagree. When the result of a purchase and assumption transaction is to allocate assets to satisfy the demands of competing claimants, with certain categories of claimants receiving priority, FSLIC acts as a liquidator. *See North Miss. Sav.*

& Loan Ass'n v. Hudspeth, 756 F.2d 1096, 1102 (5th Cir.1985), cert. denied, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986), overruled in part on other grounds, Coit Independence Joint Venture v. Federal Sav. & Loan Ins. Corp., —— U.S. ——, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989). The "bulk liquidation" employed in this case merely expedited the asset distribution process.

3. Appellants erroneously contend that FHLBB directed FSLIC to apply all portions of the Texas priority statute in liquidating Sunbelt Savings' assets. Review of the FHLBB resolution reveals that the only aspect of the Texas scheme FSLIC was to apply was that granting depositors priority over other unsecured general creditors. In all other respects, claimants' priority was governed by the federal statute and regulations discussed above.

In its resolution declaring Sunbelt Savings insolvent, FHLBB noted that the institution's assets were insufficient to satisfy secured and deposit liabilities. In light of this shortfall and the priority regulation favoring depositors over general creditors, FHLBB entered a finding that general creditors' claims against Sunbelt Savings were worthless.[4] This finding foreclosed any right general creditors may have had to payment of their claims out of the receivership assets. The finding also set the stage for FSLIC's liquidation of Sunbelt Savings' assets through the Acquisition Agreement, pursuant to which New Sunbelt assumed liabilities to depositors, to the extent of their deposits, and liabilities to secured creditors, to the extent of the value of their security.

Study of the consequences of these events reveals that appellants are not entitled to relief under the Fraudulent Transfer Act. To the extent they had valid claims against Sunbelt Savings prior to the insolvency declaration, appellants were either secured creditors or unsecured general creditors. If appellants were secured creditors, New Sunbelt has assumed Sunbelt Savings' liability and avoidance of the transfer is unnecessary to satisfy the claims. If appellants were unsecured general creditors, they no longer have a claim against the transferred assets. As a matter of federal law, the FHLBB worthlessness finding foreclosed any right general creditors previously may have had to payment out of Sunbelt Savings' assets. In either case resort to the Fraudulent Transfer Act was inappropriate. Because the statute was inapplicable to FSLIC's transfer to New Sunbelt, there was no conflict requiring consideration of the preemption issue.

 In the appellate briefs and in oral argument before this court counsel for appellants raised a number of arguments attacking the means by which FSLIC carried out its receivership responsibilities. The primary complaint raised in oral argument was that FSLIC did not adopt a procedure to classify creditors' claims against Sunbelt Savings. Appellants also contend that FSLIC's actions resulted in various constitutional violations. Because appellants did not raise these arguments in the district court and they are irrelevant to the sole issue raised by appellants' district court petitions—whether the Fraudulent Transfer Act requires avoidance of the transfer to New Sunbelt—we decline to consider them.

The district court's judgments are AFFIRMED.

4. We are bound by FHLBB's worthlessness determination in this proceeding. Appellants did not challenge this determination in the district court, nor is it clear they could do so in this collateral proceeding. *See Village South Joint*

*Venture v. Federal Deposit Ins. Corp.,* 733 F.Supp. 50 (N.D.Tex.1990); *Federal Sav. & Loan Ins. Corp. v. Locke,* 718 F.Supp. 573, 586 (W.D. Tex.1989).