[No. D013854. Fourth Dist., Div. One. Jan. 4, 1993.]

TRI-CONTINENT INTERNATIONAL CORPORATION, Plaintiff and Appellant, v.
PARIS SAVINGS AND LOAN ASSOCIATION et al., Defendants and Respondents.

COUNSEL

Zybelman, Paluso, Alter, Graham & Sceper, Jay Zybelman, Anne Fletcher and Mark Feinberg for Plaintiff and Appellant.

Procopio, Cory, Hargreaves & Savitch, Edward I. Silverman, Worley, Schwartz, Garfield & Rice, Charles V. Berwanger, Luce, Forward, Hamilton & Scripps, Christopher K. Barnette, Tuttle & Taylor, Katherine C. Sheehan and Christopher J. Bellotto for Defendants and Respondents.

OPINION

**WIENER, Acting P. J.**—This case involves plaintiff Tri-Continent International Corporation's (Tri-Continent) attempt to buy unimproved land from defendant Paris Savings and Loan Association (Paris), later declared insolvent. Tri-Continent appeals the summary judgment in favor of defendants American Federal Bank, F.S.B. (American Federal) and the Federal Deposit Insurance Corporation (FDIC) as receiver for Paris. Central to Tri-Continent's appellate arguments is its challenge to the power of the FDIC, as receiver for Paris, to repudiate the real estate contract at issue. As will be seen from our opinion we conclude it is unnecessary to decide this contention. Although various independent grounds exist for affirming the summary judgment, we have selectively determined Tri-Continent voluntarily withdrew its claim for specific performance, thereby rendering moot the propriety of the repudiation of the contract. As to Tri-Continent's claim for damages, we further determine Tri-Continent is precluded from obtaining any monetary recovery against either the FDIC or American Federal based on a conclusive finding the claims of Paris's general creditors are worthless.

FACTUAL AND PROCEDURAL BACKGROUND

In January 1988, Tri-Continent entered into an agreement with Paris to purchase undeveloped real property in Rancho Santa Fe for $1,350,000. Under the terms of the agreement, Tri-Continent was to deposit $50,000 of

the total purchase price in the form of a certified check into escrow by March 4, 1988. When Tri-Continent failed to deposit these funds into escrow, Paris requested that Tri-Continent execute an addendum to the escrow instructions. Tri-Continent refused to accept the changes and Paris terminated the agreement by letter dated March 24, 1988.

In May 1988, Tri-Continent sued Paris for specific performance, declaratory relief, breach of the covenant of good faith and fair dealing and damages. In August 1988, the Federal Home Loan Bank Board (Bank Board) determined that Paris was insolvent and placed it into receivership with the Federal Savings and Loan Insurance Corporation (FSLIC) as receiver. The FSLIC as receiver was substituted into Tri-Continent's lawsuit in place of Paris.

Based on the administrative record before it, the Bank Board determined the liquidation of Paris's assets would be insufficient to satisfy the prior claims of secured creditors and depositors and therefore the claims of general creditors were worthless.[1] In a liquidation of Paris's assets in August 1988, the FSLIC entered into a purchase and assumption agreement with American Federal. Under this agreement, American Federal assumed Paris's liabilities to depositors and secured creditors to the extent of their security.[2] In exchange, American Federal acquired substantially all of Paris's assets, including the property at issue in this case.[3] The agreement also provided that American Federal was entitled to any assets acquired by the receiver after the date of the agreement. In October 1988, Tri-Continent amended its complaint to include American Federal as a defendant.

In May 1989, the FSLIC as receiver for Paris notified Tri-Continent of its determination that performance of the contract, if it was still in force and effect, would be burdensome and therefore, under its statutory authority, it

---

[1]According to a monthly report of financial condition dated August 12, 1988, filed by Paris under FSLIC regulations, Paris's liabilities to its depositors and secured creditors exceeded its assets by more than $146 million.

[2]In distributing the assets of the receivership, the FSLIC was required to pay in full the valid claims of all creditors in a particular priority class before any claims of creditors in the next lower priority class could be paid. (See 12 C.F.R. former § 569c.11(d).) Thus, under federal priority regulations and the Texas "depositor preference" statute, if assets of the failed institution were insufficient to allow the receiver to pay depositors and secured creditors in full, general unsecured creditors were not entitled to anything.

[3]At the time the property was transferred by the FSLIC to American Federal, it was subject to a lis pendens recorded by Tri-Continent.

was repudiating the contract. (See 12 U.S.C. former § 1729; 12 C.F.R. former § 569a.)[4]

American Federal moved for summary judgment on three separate grounds: (1) the FSLIC had disaffirmed the contract; (2) Tri-Continent had failed to perform all conditions and covenants required of it under the contract; and (3) American Federal did not assume any liabilities associated with the property at issue under the purchase and assumption agreement. In its motion for summary judgment, the FDIC argued: (1) even as a general creditor, Tri-Continent could recover in damages only the amount it would have received in a liquidation of Paris, and due to the lack of assets in the receivership, Tri-Continent would receive nothing; and (2) Tri-Continent was not entitled to specific performance because the contract was unenforceable following the FDIC's repudiation and in any event, the FDIC no longer had any interest in the subject property.

*At oral argument on the summary judgment motions, counsel for Tri-Continent advised the court it was no longer asserting a claim for specific performance of the contract.* The court granted both the FDIC's and American Federal's motions for summary judgment and ordered the lis pendens expunged.[5] In its written order, approved as to content and form by Tri-Continent, the court dismissed Tri-Continent's claim for specific performance against the FDIC based on the fact Tri-Continent's counsel had withdrawn that claim. The court entered judgment in favor of the FDIC and American Federal as to all causes of action and dismissed Tri-Continent's action with prejudice.

DISCUSSION

I

 Tri-Continent's principal arguments are twofold: (1) the FDIC as receiver improperly "adjudicated" Tri-Continent's suit against Paris when it attempted to repudiate the contract for sale of the property; and (2) the provisions of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) do not apply retroactively to allow the FDIC as receiver to repudiate the contract between Tri-Continent and Paris.

---

[4]On August 9, 1989, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) (Pub.L. No. 101-73, 103 Stat. 183.) FIRREA abolished the FSLIC and transferred the receivership functions performed by the FSLIC for receiverships established before January 1, 1989, to the FSLIC Resolution Fund, which is managed exclusively by the FDIC. As manager of the FSLIC Resolution Fund, the FDIC was substituted in place of the FSLIC as receiver for Paris in this litigation by operation of law. (See 12 U.S.C. former § 1437.)

[5]Tri-Continent petitioned this court for a writ of mandate and writ of supersedeas which were denied on March 12, 1991.

Both arguments attack the propriety of the FDIC's repudiation power and thus are relevant only to Tri-Continent's claim for specific performance.[6]

Resolution of the issues raised by Tri-Continent becomes unnecessary when viewed in light of the procedural posture of this case. At the hearing on the motions for summary judgment, counsel for Tri-Continent acknowledged that because the FDIC no longer had an interest in the property at issue, Tri-Continent was not seeking specific performance of the contract, but only damages. The withdrawal of the specific performance claim against the FDIC is incorporated in the court's order dismissing that claim with prejudice. Having voluntarily eliminated its claim for specific performance, Tri-Continent cannot now argue its entitlement to specific performance based on the impropriety of the FDIC's repudiation.

American Federal was not a party to the contract between Tri-Continent and Paris, nor was it a successor entity. American Federal was simply a third party purchaser of the property. Tri-Continent cannot assert a claim for breach of contract against one who is not a party to the contract. Because American Federal was not a party to the contract and cannot be compelled to perform under its terms, Tri-Continent's voluntary dismissal of its specific performance claim against the FDIC effectively terminated its claim for specific performance against American Federal.[7] Accordingly, summary judgment in favor of the FDIC and American Federal as to Tri-Continent's specific performance claim was proper.

## II

Once Tri-Continent withdrew its claim for specific performance, its only remaining claim against the FDIC was for damages. The maximum liability of the FDIC is the amount the claimant would have received if the FDIC had liquidated the assets and liabilities of the failed institution. (12 U.S.C. § 1821(i).)[8]

Here, the Bank Board conclusively determined the claims of Paris's general creditors were "worthless." If Paris's assets were liquidated and the

---

[6] If a receiver repudiates a contract of the debtor, specific performance is not available as a remedy for breach of contract. (See *Southern Express Co.* v. *Western North Carolina Railroad Co.* (1879) 99 U.S. 191, 200-201 [9 Otto 191, 25 L.Ed. 319, 321].) Nevertheless, the plaintiff retains the remedy of damages. (See *National Bank of Kentucky* v. *Louisville Trust Co.* (6th Cir. 1933) 67 F.2d 97, 100.)

[7] Further, after the lis pendens was expunged, American Federal's title to the property was no longer subject to Tri-Continent's claims against the FDIC. (Code Civ. Proc., §§ 405.30-405.34.)

[8] 12 United States Code section 1821(i) was enacted as part of FIRREA in 1989 as a codification of existing law applying to FSLIC receiverships. (H.R. Conf. Rep. No. 101-222, 101st Cong., 1st Sess., at p. 397, reported in 1989 U.S. Code Cong. & Admin. News No. 2,

proceeds distributed to creditors in the order required, the assets would be exhausted long before the liabilities to secured creditors and depositors were satisfied. Even if Tri-Continent obtained a money judgment in its breach of contract action and thus became a general unsecured creditor of Paris, it would be entitled to receive nothing on its claim.[9] (See *AmWest Sav. Ass'n. v. Farmers Market of Odessa* (W.D.Tex. 1990) 753 F.Supp. 1339, 1346 [where lack of receivership assets to pay unsecured creditors will never change, court may not award damages in any amount]; see also *First Indiana Federal Sav. Bank* v. *F.D.I.C.* (5th Cir. 1992) 964 F.2d 503, 507.)

The Bank Board's findings and conclusions constituted final agency action subject to judicial review under the Administrative Procedure Act. (See 5 U.S.C. §§ 702-706; *AmWest Sav. Ass'n.* v. *Farmers Market of Odessa, Inc., supra,* 753 F.Supp. at p. 1346; *Village South Joint Venture* v. *FDIC* (N.D.Tex. 1990) 733 F.Supp. 50, 51-52.) Tri-Continent has never challenged the Bank Board's findings and conclusions and may not do so now. (*Triland Inv. Group* v. *Federal Deposit Ins. Corp., supra,* 735 F.Supp. at p. 700; *AmWest Sav. Ass'n.* v. *Farmers Market of Odessa, supra,* 753 F.Supp. at p. 1346.) Because we are bound by the Bank Board's "worthlessness" determination, Tri-Continent is precluded from obtaining any monetary recovery from the FDIC in this action.[10] The trial court properly granted summary judgment.

DISPOSITION

The judgment is affirmed.

Benke, J., and Nares, J., concurred.

---

pp. 432, 436.) This section applies to receiverships like the one here created prior to FIRREA. (*Triland Inv. Group* v. *Federal Deposit Ins. Corp.* (N.D.Tex. 1990) 735 F.Supp. 698, 700.)

[9]We take judicial notice of the decision of another court that considered the same Bank Board resolution involving Paris's receivership:

"[The] evidence persuades the Court that Paris' receivership estate will never have any assets from which a judgment for damages might be satisfied. Furthermore, the validity of the [Bank Board's] determination of insolvency has not been challenged in this case. Thus, in light of the [Bank Board's] finding that general creditors such as the plaintiffs would have received nothing if Paris had been liquidated, the FDIC as receiver has no liability to the plaintiffs for any damages. 12 U.S.C. § 1821(i)(2)." (*State Property Dallas, Inc.* v. *Paris Savings and Loan Assoc.* (E.D.Tex. May 23, 1990) S-88-248-CA, slip opn. at p. 4.)

[10]At oral argument, counsel for Tri-Continent stated his client is seeking damages against American Federal. However, because Tri-Continent sought only specific performance and not damages against American Federal, Tri-Continent is unable to pursue American Federal on a cause of action never alleged.